# United States Court of Appeals for the Federal Circuit

_____

**In re: ADAPTREND, INC.,**
*Appellant*

_____

2023-1195

_____

Appeal from the United States Patent and Trademark
Office, Trademark Trial and Appeal Board in No. 92074784.

_____

**BRIEF OF APPELLANT ADAPTREND, INC.**

_____

MANDOUR & ASSOCIATES, APC
Gordon E. Gray (CA SBN 175209)
8605 Santa Monica Blvd., Suite 1500
Los Angeles, CA 90069
Telephone: (858) 487-9300
Attorneys for Appellant,
Adaptrend, Inc.

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

**In re: ADAPTREND, INC.,**

No.: 2023-1195

**<u>CERTIFICATE OF INTEREST</u>**

Pursuant FCR 47.4, Counsel for Appellant, Adaptrend, Inc., certifies the following:

1.      The full name of every entity represented by me is: Adaptrend, Inc.

2.       The name of the real party in interest (if the party names in the caption are not the real party in interest) represented by me is: Not applicable.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: None.

4.      The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court is: Gordon E. Gray of Mandour & Associates, APC.

5.      There are no cases that are pending in this or any other court which counsel believes will directly affect or be directly affected by this appeal.

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ....................................................1

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................1

STATEMENT OF THE CASE AND FACTS ........................................................2

SUMMARY OF THE ARGUMENT ......................................................4

ARGUMENT ......................................................................................5

   I.   APPLICABLE STANDARDS OF REVIEW .................................5

   II.  THE BOARD SHOULD NOT HAVE GRANTED SUMMARY
   JUDGMENT BECAUSE THERE WAS A GENUINE DISPUTE AS TO
   PETITIONER'S ALLEGED PRIORITY OF USE. ...............................7

     A.  The Izumi Declaration and Exhibit C Lack Foundation and are
     Inadmissible Hearsay Regarding the Alleged 2016 Oral Assignment. ..............8

     B.  The Narita Declaration Lacked Foundation and was Inadmissible Hearsay
     Regarding the Alleged 2016 Oral Assignment.................................14

     C.  The Reply Declarations of Izumi and Narita Do Not Support the Board's
     Entry of Summary Judgment. ..........................................................17

     D.  Summary Judgment is Inappropriate Because There Was a Genuine
     Dispute as to Narita's Alleged Continuous Use of the Subject Mark. ..............20

   15 U.S.C. § 1052(d). The Board's ruling asserts that Adaptrend waived an
   affirmative defense of abandonment. [Appx282-283.] However, "not
   abandoned" is a statutory element of the priority claim required to be proven by
   Petitioner Narita Export at summary judgment. 15 U.S.C. § 1052(d) ...............20

   and 802.............................................................................................21

   III. NARITA EXPORT DID NOT HAVE ENTITLEMENT TO A
   STATUTORY CAUSE OF ACTION FOR ITS PETITION TO CANCEL. ........24

CONCLUSION AND RELIEF SOUGHT ...........................................28

# TABLE OF AUTHORITIES

**Cases**

*Action Temporary Servs., Inc. v. Labor Force, Inc.*,
 870 F.2d 1563 (Fed. Cir. 1989)..................................................................5
*Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*,
965 F.3d 1370 (Fed. Cir. 2020)................................................................24
*Aycock Eng. v. Airflite*, 560 F.3d 1350 (Fed. Cir. 2009) .........................25
*B&B Hardware, Inc. v. Hargis Indus.*, Inc., 135 S. Ct. 1293 (2014) .....................12
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1987) .........................................6
*Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298 (Fed. Cir. 2020) ...........................24
*Doeblers' Pennsylvania Hybrids v. Doebler*,
 442 F.3d 812 (3rd Cir. 2006) ...................................................... 10, 11
*Empresa Cubana Del Tabaco v. Gen. Cigar Co.*,
753 F.3d 1270 (Fed. Cir. 2014)................................................................24
*Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*,
 93 F.3d 774 (Fed. Cir. 1996)................................................................5, 7
*Kate Spade LLC v. Thatch, LLC*, 126 USPQ2d 1098 (T.T.A.B. 2018) ..................12
*Lencco Racing Co. v. Jolliffe*, 215 F.3d 1341 (Fed. Cir. 1999)................................6
*Lipton Indus., Inc. v. Ralston Purina Co.*,
 670 F.2d 1024 (T.T.A.B. 1982) ............................................................25
*Lloyd's Food Products Inc. v. Eli's Inc.*, 987 F.2d 766 (Fed. Cir. 1993).................6
*Minneapolis St. Louis R.R. Co. v. Peoria Perkin Union Ry. Co.*,
 270 U.S. 580 (1926)................................................................................25
*Olde Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d 200 (Fed. Cir. 1992)..................6
*Opryland USA Inc. v. The Great American Music Show, Inc.*,
 970 F.2d 847 (Fed. Cir. 1992)...................................................... 6, 19, 22
*Proctor Gamble Co. v. Paragon Trade Brands, Inc.*,
 917 F. Supp. 305 (D. Del. 1995)............................................................26
*Ritchie v. Simpson*, 170 F.3d 1092 (Fed. Cir. 1999)................................................25
*Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995)................................7
*Saab Cars USA, Inc. v. United States*, 434 F.3d 1359 (Fed. Cir. 2006)..................7
*Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620 (1944).........................................13
*Semcon Tech, LLC v. Micron Technology, Inc.*,
 660 F. App'x 908 (Fed. Cir. 2016).........................................................6
*T.A.B. Systems v. Pactel Teletrac*, 77 F.3d 1372 (Fed. Cir. 1996) ..........................5
*Tiger Lily Ventures Ltd. v. Barclays Capital Inc.*,
 35 F.4th 1352, 1360 (Fed. Cir. 2022) .....................................................23
*TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876 (7th Cir. 1997)...11

*Typeright Keyboard v. Microsoft Corp.*, 374 F.3d 1151 (Fed. Cir. 2004) .............13
*Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) ........24
*Westrex Corporation v. New Sensor Corporation*, No. 91170940 (T.T.A.B. May 11, 2007)....................................................................................................20

## Statutes

15 U.S.C. § 1052(d) ................................................................................ 20, 21
15 U.S.C. § 1060(a)(3).....................................................................................27
15 U.S.C. § 1127 ..............................................................................................22
28 U.S.C. § 1295(a)(4)(B) .................................................................................1

## Other Authorities

11 James Wm. Moore et al., *Moore's Federal Practice* ¶ 56.13[1] (3d ed. 2005) ...7
*Black's Law Dictionary* 1064 (8th ed. 2004)...................................................25

## Rules

37 CFR § 2.124 .................................................................................................12
FCR 47.4 .............................................................................................................2
Fed. R. Civ. P. 28 .............................................................................................12
Fed. R. Civ. P. 56(c)...........................................................................................6
Fed. R. Evid. 602 ................................................................... 9, 14, 15, 21
Fed. R. Evid. 802 ................................................................... 9, 14, 21, 23
Fed. R. Evid. 803(6)............................................................ 10, 16, 22, 23
Fed. R. Evid. 803(6)(A)-(C) ..................................................... 10, 16
TBMP § 520......................................................................................................12
TBMP § 703.01(b) ...........................................................................................12
TBMP §703.01(b) ............................................................................................17

**STATEMENT OF RELATED CASES**

Other than the proceeding before the Trademark Trial and Appeal Board from which this appeal is taken, this case has not previously been before this Court or any other Court. There are no cases that are pending in this or any other court which counsel believes will directly affect or be directly affected by this appeal.

**STATEMENT OF JURISDICTION**

This Court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B). Appellate jurisdiction is based upon a timely appeal filed on November 22, 2022 appealing the final decision of the Trademark Trial and Appeal Board dated September 20, 2022.

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

1. Whether the Trademark Trial and Appeal Board erred in granting summary judgment cancelling Appellant's TONOSAMA trademark registration;

2. Whether there is a genuine issue of material fact regarding the alleged oral assignment from Kabushiki Kaisha TI Express to Narita Export LLC;

3. Whether the Trademark Trial and Appeal Board erred by denying Appellant's objections to the Narita declaration;

4. Whether the Trademark Trial and Appeal Board erred by denying

Appellant's objections to the Izumi declaration;

5. Whether the Trademark Trial and Appeal Board erred by finding Narita Export LLC had priority to the TONOSAMA trademark; and,

6. Whether Narita Export LLC has an entitlement to a statutory cause of action in the present case.

## STATEMENT OF THE CASE AND FACTS

Adaptrend, Inc. ("Adaptrend") owns U.S. Trademark Reg. No. 5,873,672 ("the '672 registration") for the mark TONOSAMA, in standard characters, for "gift baskets containing candy; candy; candies; gift baskets containing candy and Japanese candies" in International Class 30. [Appx1-2.] The '672 registration issued on October 1, 2019. *Id.* Narita Export LLC ("Narita Export") filed Application Serial No. 88665122 ("the '122 application") for the same mark, TONOSAMA, and the same goods on October 23, 2019 based on an allegation of use date of March 27, 2016. [Appx3-17.] Narita Export filed its petition to cancel the '672 registration on July 22, 2020. [Appx18-19.] Narita Export's petition claimed a likelihood of confusion between the TONOSAMA marks and that it had prior common law rights to the TONOSAMA mark for the cited goods. [Appx20-23.] In particular, the petition alleged "TONOSAMA has been used continuously by Petitioner and Petitioner's predecessor in interest from at least

March 28, 2016 to the present…". [Appx22 - Petition, ¶9.]  Adaptrend answered and denied Narita Export's claims.  [Appx24-28.]

Narita Export provided its initial disclosures on December 29, 2020 and failed to identify either the oral agreement or the document claiming to memorialize the oral agreement.  [Appx29-33.]  Adaptrend responded to Narita Export's interrogatories and document requests on May 24, 2021.  [Appx206-207.]    In those responses, Adaptrend withdrew affirmative defenses of non-ownership and abandonment "without prejudice pending further discovery."  *Id.* Nearly *one year* after filing its petition to cancel and nearly two months after Adaptrend's discovery responses, Narita Export recorded a *nunc pro tunc* assignment, signed *October 20, 2020*, that claimed to memorialize a November 25, 2016 oral agreement assigning the TONOSAMA trademark from Kabushiki Kaisha TI Express ("KKTI") to Narita Export.  [Appx57-60.]  The document was signed by Teruhiko Izumi, President of KKTI.  *Id.*  The document was recorded on July 7, 2021, nearly two months after Adaptrend's discovery responses cited by the Board in its decision.  *Id.*  Narita Export responded to Adaptrend's written discovery on July 9, 2021.  [Appx34-42.]  Discovery closed on July 28, 2021. [Appx61.]    Narita Export's motion for summary judgment was filed on January 7, 2022.  [Appx64.]  Adaptrend opposed and objected to the declarations of Messrs. Izumi and Narita and the alleged trademark assignment.  [Appx244-261.]

Narita Export replied and submitted reply declarations of both Mr. Izumi and Mr. Narita in response to Adaptrend's objections and opposition. [Appx262-278.] The Board entered summary judgment on September 20, 2022. [Appx279-296.]

## SUMMARY OF THE ARGUMENT

The Trademark Trial and Appeal Board erred by granting summary judgment in favor of Narita Export when there was a genuine dispute regarding a pivotal material fact at the center of its case, namely the alleged oral assignment of trademark rights from KKTI and Narita Export in November 2016. Narita Export's proffered evidence of the alleged oral assignment was based on inadmissible hearsay testimony from Messrs. Izumi and Narita that clearly lacked foundation regarding the claimed oral assignment. Moreover, even if the oral assignment can be established as a matter of law, Narita Export failed to provide evidence of continuous use of the subject mark since November 2016. Mr. Narita's declaration merely claimed, "Since January 1, 2017, Narita has made more than 6,600 independent sales." [Appx275.] Notably, Mr. Narita failed to testify as to *when* these sales occurred and failed to provide Amazon and/or other records to corroborate his testimony.

Furthermore, the void '122 trademark application and the timing of Narita Export's *nunc pro tunc* assignment, namely *three* months after the initiation of the

action before the TTAB, establishes that Narita Export had no entitlement to a statutory cause of action to bring the petition to cancel at the time the petition to cancel was filed. *Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*, 93 F.3d 774, 779-80 (Fed. Cir. 1996). As the requirement for standing is never waived, this would support remand and dismissal of the entire action. Thus, the Board erred by granting summary judgment in favor of Narita Export. Indeed, there were, at minimum, clear, triable and material issues of fact in connection with Narita Export's claim. The case should be remanded for trial or dismissed altogether.

## ARGUMENT

### I.    APPLICABLE STANDARDS OF REVIEW

The Federal Circuit, in reviewing the Board's decision, reapplies the legal standard of Federal Rule of Civil Procedure 56(c) to the evidence of record, according to which summary judgment is proper where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *T.A.B. Systems v. Pactel Teletrac*, 77 F.3d 1372, 1374 (Fed. Cir. 1996) (*citing Action Temporary Servs., Inc. v. Labor Force, Inc.*, 870 F.2d 1563, 1565, 10 USPQ2d 1307, 1308-09 (Fed. Cir. 1989).) The party moving for summary judgment has the initial burden of demonstrating that there is no genuine dispute of material fact

remaining for trial and that it is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1987).  In considering

whether summary judgment is appropriate, all evidence must be viewed in the light

most favorable to the nonmovant, and all justifiable inferences are to be drawn in

the nonmovant's favor.  *Opryland USA Inc. v. The Great American Music Show,*

*Inc.*, 970 F.2d 847, 850, 23 USPQ2d 1471, 1472 (Fed. Cir. 1992).  On summary

judgment, the Board may not resolve issues of material fact; it may only ascertain

whether such issues are present.  *Lloyd's Food Products Inc. v. Eli's Inc.*, 987 F.2d

766, 767, 25 USPQ2d 2027, 2029 (Fed. Cir. 1993); *Opryland USA*, *supra,* 970

F.2d at 850, 23 USPQ2d at 1472; *Olde Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d

200, 202, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992).  Moreover, where the moving

party bears the ultimate burden of proof, "summary judgment cannot be granted

unless the movant makes a showing on each required element and the nonmovant's

response fails to raise a genuine issue of material fact as to any element." *Semcon*

*Tech, LLC v. Micron Technology, Inc.*, 660 F. App'x 908 (Fed. Cir. 2016)(*citing*

*Lencco Racing Co. v. Jolliffe*, 215 F.3d 1341 (Fed. Cir. 1999).)  As the leading

commentator on federal procedure puts it, "[i]f the motion is brought by a party

with the ultimate burden of proof, the movant must still satisfy its burden by

showing that it is entitled to judgment as a matter of law even in the absence of an

adequate response by the nonmovant." 11 James Wm. Moore et al., *Moore's*

*Federal Practice* ¶ 56.13[1] (3d ed. 2005). *See Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1368 (Fed. Cir. 2006).

The Federal Circuit, on the issue of entitlement to a statutory cause of action or standing, holds, "The question of a party's standing to bring a case is a jurisdictional one which we review de novo. *Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*, 93 F.3d 774, 777 (Fed. Cir. 1996) (citing *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551, 35 USPQ2d 1065, 1074 (Fed. Cir.) (*en banc*), cert. denied, 116 S.Ct. 184 (1995)).

## II.  THE BOARD SHOULD NOT HAVE GRANTED SUMMARY JUDGMENT BECAUSE THERE WAS A GENUINE DISPUTE AS TO PETITIONER'S ALLEGED PRIORITY OF USE.

Narita Export, in the motion for summary judgment, did not dispute that Appellant Adaptrend's date of first use is at least as early as **June 13, 2016**. [Appx71.]   25 TTABVUE 1.  Conversely, Narita Export admitted that it did not make use of the subject mark until **November 25, 2016**.  [Appx74.]  Instead, Narita Export based its priority claim solely on an alleged oral agreement between Narita Export and KKTI from November 2016 assigning KKTI's alleged rights in the TONOSAMA mark to Narita Export.  [Appx71.]  With regards to this alleged oral agreement, genuine disputes of material fact abound.

### A. The Izumi Declaration and Exhibit C Lack Foundation and are Inadmissible Hearsay Regarding the Alleged 2016 Oral Assignment.

Narita Export submitted the declaration of Teruhiko Izumi in support of its motion for summary judgment. [Appx95-97.] Adaptrend objected to the declaration as lacking foundation and comprising inadmissible hearsay per Fed. R. Evid. 602 and 802. [Appx251-252.] While Mr. Izumi testified that he was the CEO of KKTI in 2016, he does not testify that he or anyone else at KKTI assigned its trademark rights to Narita Export in November 2016. Instead, he claimed:

> On October 20, 2020, I executed a Nunc Pro Tune Trademark Assignment to Narita Export LLC, with an effective date of November 25, 2016. I was president of TI Express at the time of the effective date of the Nunc Pro Tunc Trademark Assignment to Narita. The written assignment memorialized the prior oral trademark assignment of the TONOSAMA mark to Narita. The oral assignment transferred the TONOSAMA mark and the goodwill associated therewith to Narita. Exhibit C to the Summary Judgment Motion is a true and correct copy of the Nunc Pro Tunc Trademark Assignment.

[Appx97 and 169-170.] While Mr. Izumi admitted he executed Exhibit C in 2020, three months after initiation of this action, and he claimed he was President of KKTI in 2016, he did *not* claim that he participated in the oral agreement himself or that he witnessed the oral agreement in any way. *Id.* Moreover, Mr. Izumi provided no corroborating details regarding who allegedly participated in the agreement on behalf of Narita Export nor does he provide any documents referring to the oral

agreement or the alleged terms of the oral agreement memorialized in 2020, *e.g.* emails, texts, bank drafts for payment of consideration, *etc.* In short, he provided no foundational basis for his testimony beyond that he was President of KKTI in 2016. Thus, the objection to the Izumi declaration should have been sustained as it lacks foundation. Fed. R. Evid. 602.

To the extent, Mr. Izumi was told of the oral agreement or had another agent of KKTI participate in the alleged oral agreement, Mr. Izumi provides no evidence to support an exception to the hearsay rule. Fed. R. Evid. 802. For example, if Mr. Izumi is testifying as the custodian of records for KKTI for a business records hearsay exception, he would need to establish the following in his declaration:

> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
>
> (A) the record was made at or near the time by or from information transmitted by someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) ***all these conditions are shown by the testimony of the custodian or another qualified witness***, or a by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) ***the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness***.

Fed. R. Evid. 803(6)(emphasis added).  Mr. Izumi did not identify the "someone with knowledge" that told him of the oral assignment, when he was allegedly told, or that such a record was kept in the regular course of business.  Fed. R. Evid. 803(6)(A)-(C).  Moreover, Mr. Izumi's role as the source of the alleged information, particularly regarding his timing of the *Nunc Pro Tunc* Assignment, i.e. three months after the cancellation action commenced, indicates a clear lack of trustworthiness.  Mr. Izumi's declaration and Exhibit C are inadmissible hearsay that should have been excluded or left to the fact-finder at trial (after the opportunity to cross-examine the declarant) to determine their credibility and trustworthiness.  The Izumi declaration should have been stricken as inadmissible, was not sufficient to support summary judgment, and raised genuine issues of material fact.  The Board's denial of Adaptrend's objection was clear error.

Moreover, regardless of the admissibility of Mr. Izumi's declaration, it cannot support entry of summary judgment.  The Third Circuit in *Doeblers' Pennsylvania Hybrids v. Doebler*, 442 F.3d 812, 822 (3rd Cir. 2006) warned:

> [C]ourts must be cautious in scenarios that do not involve clear written documents of assignment.  'Requiring strong evidence to establish an assignment is appropriate both to prevent parties from using self-serving testimony to gain ownership of trademarks and to give parties incentive to identify expressly the ownership of the marks they employ.' The plaintiff's reliance on the possibly self-serving testimony of one of its principals regarding events occurring more than 30 years ago creates important questions for a fact-finder regarding [Plaintiff's Vice

-10-

President's] credibility, ***and is simply insufficient to prove a trademark assignment as a matter of law***.

*Id.* at 822 (*citing TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 884 (7th Cir. 1997)(emphasis added).

Congress routinely requires written assignments for intellectual property rights. *See* 15 U.S.C. §1060 (register trademarks), 35 U.S.C. §261 (patents), and 17 U.S.C. §204 (copyrights). The court in *Doebler, supra,* rightly cautions courts in scenarios where there are no clear written documents of assignment. *Doeblers' Pennsylvania Hybrids, supra.* Instead, the Board, on a motion for summary judgment, relied on the credibility of two self-serving witnesses and admitted friends, Messrs. Izumi and Narita, to establish the existence of an oral assignment in 2016, years prior to the cancellation action. Accordingly, summary judgment was inappropriate for such a credibility determination and the motion should have been denied.

It is important to note that Mr. Izumi, a non-party foreign national from Japan, was not available for deposition during discovery. Japan is **not** a signatory to The Hague Convention on Taking Evidence in Civil or Commercial Matters. *Imamura v. Gen. Elec. Co.*, 371 F. Supp. 3d 1, 13 (D. Mass. 2019). The Court in *Imamura, supra,* explained:

> [The] Hague Convention's streamlined method of securing transcribed testimony is not available here because Japan has not signed on to the Convention. Instead, under the U.S.-Japan Consular

Convention, a party seeking to acquire testimony must take a deposition at a U.S. consulate supervised by a consular officer. It usually takes six months to a year to obtain testimony from Japanese witnesses. Notably, this process only applies to willing witnesses; to compel testimony from unwilling witnesses, parties must ask a U.S. court to issue a "letter rogatory" that passes through diplomatic channels and must be enforced by a Japanese judge.

*Imamura, supra,* at 13 (citations omitted). The operative Board Rule, TBMP § 520, does not allow for a discovery deposition on written questions (or otherwise) of a non-Hague national. *See* 37 CFR § 2.124 and Fed. R. Civ. P. 28. The fact that Mr. Izumi was unavailable for deposition during discovery further degrades the trustworthiness of his declaration.

Conversely, Mr. Izumi would have to be made available for cross-examination if his testimony was presented at trial before the Board. TBMP § 703.01(b) and 37 CFR § 2.123(a)(1). In fact, Narita Export's failure to make Mr. Izumi available for cross-examination during the testimony period would result in the Board's refusal to consider his testimony at trial. *Kate Spade LLC v. Thatch, LLC*, 126 USPQ2d 1098, 1104, n. 9 (T.T.A.B. 2018) and TBMP §703.01(b), fn. 4. Therefore, it is not certain that Mr. Izumi's testimony would even be available, let alone admissible, at trial.

The United States Supreme Court in *B&B Hardware, Inc. v. Hargis Indus.*, Inc., 135 S. Ct. 1293 (2014), held that the TTAB's decisions have preclusive effect, in part, because witness testimony is subject to cross-examination. *Id.* at

1300.  The Board's decision to accept the Izumi declaration on summary judgment

in the present case was erroneous because, *inter alia,* it denied Adaptrend the

ability to cross-examine the declarant at trial on issues of credibility.

> The Board held in the present case:
>
> Testimony, even of a single witness, if 'sufficiently probative,' may
> be sufficient to prove priority. **The determinative factor is whether
> the testimony is 'characterized by contradictions, inconsistencies,
> and indefiniteness' and whether it carries with it conviction of
> accuracy and applicability**.

[Appx286-287] (emphasis added).  This is a clear admission that the Board made

credibility determinations not permitted on summary judgment regarding Mr.

Izumi and Mr. Narita's declarations.

It is well-established that the Board should not be engaged in credibility

determinations on a motion for summary judgment:

> Summary judgment should not be denied simply because the
> opposing party asserts that the movants' witnesses are not to be
> believed. However, summary judgment is not appropriate where the
> opposing party offers specific facts that call into question
> the credibility of the movants' witnesses.

*Typeright Keyboard v. Microsoft Corp.*, 374 F.3d 1151, 1158-59 (Fed. Cir. 2004);

*citing Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 628-29 (1944)

(reversing summary judgment where the only evidence in support of the movants

contention was the testimony of its experts and there were specific bases for

doubting the credibility of that testimony). The objection to the Izumi declaration

should have been sustained and the motion for summary judgment denied. The case should be remanded accordingly.

**B. The Narita Declaration Lacked Foundation and was Inadmissible Hearsay Regarding the Alleged 2016 Oral Assignment.**

Narita Export also submitted the declaration of Keigo Narita in support of its motion for summary judgment. [Appx93-94.] The declaration of Mr. Narita, like the Izumi declaration, lacks foundation and is inadmissible hearsay regarding the alleged 2016 oral assignment. Adaptrend objected to the Narita declaration, accordingly per Fed. R. Evid. 602 and 802. [Appx250-251.]

Mr. Narita's declaration states that it is based on his personal knowledge *or on business records.* [Appx93](emphasis added). However, he fails to identify which basis is the foundation for his testimony regarding the alleged 2016 oral assignment. *Id.* His sole testimony regarding the alleged 2016 oral assignment is: "On or about November 25, 2016, TI Express entered into an oral agreement with Narita in which TI Express assigned certain assets to Narita, including all rights, title, and interest in the TONOSAMA trademark, and the goodwill associated therewith, for candy, chocolates, snack foods, and related products." [Appx93.] Thus, Mr. Narita failed to state that he personally participated in the alleged oral agreement, that he personally witnessed the oral agreement, or that he was told about the alleged oral agreement by another officer/agent of Narita Export. Moreover, Mr.

Narita, like Mr. Izumi, provided no corroborating details regarding who allegedly participated in the agreement on behalf of Narita Export nor did he provide any documents referring to the oral agreement or the alleged terms of the oral agreement memorialized in 2020, e.g. emails, texts, bank drafts for consideration, etc. In fact, it is not clear from his declaration whether Mr. Narita was the President of Narita Export LLC *in 2016* at the time of the alleged oral agreement. Mr. Narita's declaration merely claims: "I am the President of Narita Export LLC." [Appx93.] In short, he provided no foundational basis for his testimony beyond that he is currently the President of Narita Export. Thus, the objection to the Narita declaration should have been sustained as it lacked foundation. Fed. R. Evid. 602. Instead, the Board incorrectly ruled:

> Mr. Narita, as the president of the assignee, [is] positioned to know or
> have access to information relevant to the substance of [his] respective
> declaration[s] and the assignment reference therein.

[Appx287.] "Positioned to know" or "access to information' does meet the foundational requirements of Fed. R. Evid. 602 as this is not "personal knowledge." The objection to the Narita declaration should have been sustained.

Mr. Narita's declaration, like Mr. Izumi, also fails to satisfy an exception to the hearsay rule. To the extent, Mr. Narita was told of the oral agreement or had another agent of Narita Export participate in the alleged oral agreement, Mr. Narita

provides no evidence to support an exception to the hearsay rule. *See* Fed. R. Evid. 803. For example, if Mr. Narita was testifying as the custodian of records for Narita Export for a business records hearsay exception, he would need to establish the following in his declaration:

> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
>
> (A) the record was made at or near the time by or from information transmitted by someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling,
>
> whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) ___all these conditions are shown by the testimony of the custodian or another qualified witness___, or a by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) ___the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness___.

Fed. R. Evid. 803(6)(emphasis added). Mr. Narita did not identify the "someone with knowledge" that told him of the oral assignment, when he was allegedly told, or that such a record (or even what type of record) was kept in the regular course of business. Fed. R. Evid. 803(6)(A)-(C). Mr. Narita's declaration is inadmissible hearsay regarding the alleged 2016 oral agreement that should have been excluded or left to the fact-finder at trial to determine its trustworthiness.

Moreover, as discussed above, Narita's testimony was insufficient to prove a trademark assignment as a matter of law. *Doebler, supra* at 822. Mr. Narita, like Mr. Izumi, is also a Japanese foreign national unavailable for a discovery deposition. [Appx29-33.]. Mr. Narita, like Mr. Izumi, would also have been required to be produced for a cross-examination at trial or his testimony would have been disregarded. TBMP §703.01(b) and 37 CFR §2.123(a)(1); *Kate Spade LLC*, *surpra,* and TBMP §703.01(b), fn. 4. The Narita declaration is inadmissible, not sufficient to support summary judgment, and raises genuine issues of material fact, namely the credibility of Mr. Narita himself and the alleged foundational basis for his knowledge. The objection to his declaration should have been sustained. Accordingly, Narita Export's motion for summary judgment should have been denied by the Board.

## C. The Reply Declarations of Izumi and Narita Do Not Support the Board's Entry of Summary Judgment.

Narita Export, in response to Appellant's objections citing the evidentiary and credibility issues with the Izumi and Narita declarations, submitted reply declarations from Messrs. Izumi and Narita. [Appx274-278.] However, the reply declarations raise even more issues of credibility and trustworthiness that should have barred entry of summary judgment.

Messrs. Izumi and Narita, having been notified of the deficiencies surrounding their prior testimony by Adaptrend in its opposition brief, failed to provide answers or corroboration in response and Adaptrend had no opportunity to respond. As a matter of due process, the reply declarations cannot support entry of summary judgment.

The Izumi reply declaration does not identify the terms of the alleged oral assignment beyond that it was a transfer of "all right, title, and interest in the TONOSAMA trademark, and its associated goodwill." [Appx277.] The Izumi reply declaration admits that the alleged transfer was "without compensation." [Appx277.] Thus, at minimum, there is no identified consideration for the alleged assignment. Moreover, there are no corroborating documents from Mr. Izumi such as emails or other correspondence discussing the alleged assignment. In fact, Mr. Izumi does not even say whether the alleged oral assignment occurred over the phone or in person. Mr. Izumi, though claiming he "personally reached an oral agreement" with Mr. Narita, provides no corroborating details regarding the alleged agreement. [Appx275.]

The Narita reply declaration, even with the benefit of Adaptrend's criticisms, is uncorroborated, indefinite, and untrustworthy as well. [Appx275-276.] Mr. Narita's reply declaration devotes exactly one sentence to the alleged oral agreement. *Id.* Mr. Narita states:

On November 25, 2016, acting in my capacity as the Director of Narita LLC, I personally reached an oral agreement with Mr. Izumi to transfer all the right, title, and interest in the TONOSAMA trademark to Narita LLC, without compensation.

[Appx275.] As with Mr. Izumi, the Narita reply declaration admits that the alleged transfer was "without compensation." *Id.* Thus, again, there is no identified consideration for the alleged assignment. Moreover, there are no corroborating documents from Mr. Narita such as emails or other correspondence discussing the alleged assignment and, conveniently, the "without compensation" claim deprives the record of a check or bank transfer document. In fact, Mr. Narita also fails to state whether the alleged oral assignment occurred over the phone or in person. Mr. Narita, like Mr. Izumi, though claiming he "personally reached an oral agreement" with Mr. Izumi, provides no corroborating details regarding the alleged agreement. [Appx275-278.]. The reply declarations are, at minimum, indefinite.

The Board was simply asked to believe that on November 25, 2016 – out of the blue – Messrs. Izumi and Narita spoke in some fashion and the trademark was transferred without compensation and without any other terms or details identified. This is simply not credible and should not have been the basis for entry of summary judgment when, as required, the Izumi and Narita declarations should be viewed in the light most favorable to the nonmovant, and all justifiable inferences are to be drawn in the nonmovant's favor. *Opryland USA Inc. v. The Great American Music Show, Inc.*, 970 F.2d 847, 850, 23 USPQ2d 1471, 1472 (Fed. Cir. 1992).

**D. Summary Judgment is Inappropriate Because There Was a Genuine Dispute as to Narita's Alleged Continuous Use of the Subject Mark.**

Narita Export, to establish priority for its alleged common law rights, was required to prove it owned 1) a mark or trade name previously used in the United States and 2) not abandoned. 15 U.S.C. § 1052(d). The Board's ruling asserts that Adaptrend waived an affirmative defense of abandonment. [Appx282-283.] However, "not abandoned" is a statutory element of the priority claim required to be proven by Petitioner Narita Export at summary judgment. 15 U.S.C. § 1052(d) and *Westrex Corporation v. New Sensor Corporation*, No. 91170940 (T.T.A.B. May 11, 2007).

Adaptrend did state it was not pursuing an affirmative defense of abandonment in its discovery responses. [Appx282-283.] However, this does not remove the requirement that Narita Export had the burden of proof to establish prior *continuous* use of its mark as a matter of law. 15 U.S.C. §1052(d). Narita clearly failed to do so. The Board's failure to uphold this requirement is fatal to the entry of summary judgment as a matter of law.

Moreover, Adaptrend's discovery response was propounded in May of 2021. [Appx227.] Narita Export did not produce its "evidence" of use or the 2020 *nunc pro tunc* document memorializing the alleged November 2016 oral assignment until

July of 2021 and only days before the close of discovery and months after Adaptrend's responses. [Appx55 and Appx61-63].

Narita Export has submitted only the declaration testimony of Mr. Narita to establish continuous use. [Appx94.] Oddly, though it subpoenaed Amazon for sales records, Narita did not ask for and has not provided records from Amazon in support of this motion showing continuous sales of goods marked with TONOSAMA by Narita Export. *See* [Appx171-181]. Instead, Narita Export's only proffered evidence of *continuous* use from 2016 is the following testimony from Mr. Narita:

> 4. *In 2016*, sales by TI Express of TONOSAMA products, together with subsequent sales by Narita, amounted to more than 900 independent sales into the U.S. Cumulative sales during that calendar year were in excess of $22,000.
>
> 5. After its acquisition of the TONOSAMA mark, Narita continued to make substantial sales of products in connection with the TONOSAMA mark. Since *January 1, 2017*, Narita has made more than 6,600 independent sales into the U.S. Cumulative sales since then have been in excess of $78,000.

[Appx94](emphasis added). Again, Mr. Narita's testimony falls short and Adaptrend objected to his declaration based on lack of foundation and hearsay. Fed. R. Evid. 602 and 802. [Appx250-251]. In paragraph 4, Mr. Narita testifies only regarding sales of marked goods in 2016. [Appx94]. In paragraph 5, Mr. Narita testifies only that "Since January 1, 2017, Narita has made more than 6,600 independent sales into the U.S." *Id.* Critically, Mr. Narita fails to testify whether

sales occurred *after 2017* in 2018, 2019 or 2020 to the date of the petition in this action. All inferences must be drawn in favor of the nonmovant, Adaptrend. *Opryland USA Inc. v. The Great American Music Show, Inc.*, 970 F.2d 847, 850, 23 USPQ2d 1471, 1472 (Fed. Cir. 1992). In fact, to the extent sales by Petitioner occurred solely in 2017 as must be inferred in Adaptrend's favor, this would be *prima facie* evidence of abandonment of the alleged trademark rights by Narita Export. *See* 15 U.S.C. § 1127.

Furthermore, Mr. Narita again failed to establish an exception to the hearsay rule for his testimony on sales. As stated above, Mr. Narita only testified that he is the current president of Narita Export (as of January 6, 2022) rather during the years in question, namely 2017 to 2020. Thus, as a custodian of records, he must rely solely on business records kept in the normal course of business. Fed. R. Evid. 803(6). Instead, he failed to identify what records he is relying upon (e.g. Amazon records or Narita Export's own books of account) and how those records are kept and he failed to provide corroborating documents, namely the records he relies upon for the basis of his testimony. This calls into question the trustworthiness of Mr. Narita's testimony, raises a genuine issue of material fact, and makes his testimony insufficient to support summary judgment. Narita Export, thus, was not able to establish continuous use of the mark and Narita Export's motion for summary judgment should have been denied.

The reply declaration of Mr. Narita is also inadmissible hearsay per Fed. R. Evid. 802 and does not constitute an exception to the hearsay rule. Despite the benefit of the criticisms of Adaptrend's opposition, Mr. Narita's reply declaration also provides no business records, either from Narita Export or Amazon, upon which to base his testimony. Again, as a custodian of records (he does not claim to have personally sold anything), he must rely solely on business records kept in the normal course of business. Fed. R. Evid. 803(6). Instead, he fails to identify what records he is relying upon (*e.g.* Amazon records or Narita Export's own books of account) and how those records are kept and he fails to provide corroborating documents, namely the records he relies upon for the basis of his testimony. *Id.* This again calls into question the trustworthiness of Mr. Narita's testimony, raises a genuine issue of material fact, and makes his testimony insufficient to support summary judgment. Narita Export, thus, was not able to establish continuous use of the mark and Narita Export's motion for summary judgment should have been denied.

The issue of whether Narita Export did or did not abandon the TONOSAMA mark is highly factual. *Tiger Lily Ventures Ltd. v. Barclays Capital Inc.*, 35 F.4th 1352, 1360 (Fed. Cir. 2022). The Federal Circuit held, "Abandonment of a trademark is a question of fact, which we review for substantial evidence." *Id.* Narita Export, as the petitioner with the burden of proof in a cancellation proceeding, failed to submit any admissible evidence of continuous use and summary judgment

should have been denied. The summary judgment should be overturned, and the case should be remanded for trial, accordingly.

## III.  NARITA EXPORT DID NOT HAVE ENTITLEMENT TO A STATUTORY CAUSE OF ACTION FOR ITS PETITION TO CANCEL.

The murky nature of Narita Export's alleged common law trademark rights indicates it did not have an entitlement to a statutory cause of action for its petition to cancel. Though not raised below, it is well-settled that the requirement for standing and/or "entitlement to a statutory cause of action" is never waived. *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019). Entitlement to a statutory cause of action, formerly referred to as "standing" by the Federal Circuit and the Board, is an element of the plaintiff's case in every *inter partes* proceeding.[1] *See Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2671 (2021); *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837 (Fed. Cir. 2020), *reh'g en banc denied* 981 F.3d 1083, 2020 USPQ2d 11438 (Fed. Cir. 2020), *cert. denied*, 142 S. Ct. 82 (2021); *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014). To establish standing, a plaintiff

_____

[1] For simplicity, the term "standing" will be used in place of "entitlement to a statutory cause of action" in this brief.

must demonstrate: (i) an interest falling within the zone of interests protected by the statute and (ii) a reasonable belief in damage proximately caused by the registration of the mark. *Corcamore*, 2020 USPQ2d 11277 at *4. *See also Empresa Cubana*, 111 USPQ2d at 1062; *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (T.T.A.B. 1982).

In the decision below, Narita Export's alleged basis for its standing is its pending trademark application. [Appx289-290]. However, the '122 application was a use-based application claiming a date of first use of March 27, 2016. *Id.* Accordingly, the '122 application was void *ab initio* because, as demonstrated above, Narita Export cannot prove it acquired the alleged common law trademark rights to TONOSAMA from KKTI. "Void *ab initio*" means "[n]ull from the beginning." *Black's Law Dictionary* 1064 (8th ed. 2004). The Federal Circuit held, "The registration of a mark that does not meet the use requirement is void *ab initio*." *Aycock Eng. v. Airflite*, 560 F.3d 1350, 1357 (Fed. Cir. 2009). Thus, Narita Export, because its trademark application was void *prior* to its filing of the petition to cancel, cannot establish standing for its petition. The United States Supreme Court has long held: "The jurisdiction of the lower court depends upon the state of things existing at the time the suit was brought." *Minneapolis St. Louis R.R. Co. v. Peoria Perkin Union Ry. Co.*, 270 U.S. 580, 586 (1926)(emphasis added.). At the time the petition

was filed, Narita Export's trademark application was void and could not support standing.

The *nunc pro tunc* assignment is, likewise, unavailing as a basis for Narita Export's standing for the petition. *Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*, 93 F.3d 774, 779-80 (Fed. Cir. 1996). The Federal Circuit in *Gaia Technologies, supra,* held: "This agreement is not sufficient to confer standing on Gaia retroactively." The *Gaia* court, quoting *Proctor Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305, 38 USPQ2d 1678 (D. Del. 1995), admonished:

> As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignments in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day.

*Id.* at pp. 779-80. Here, the *nunc pro tunc* assignment is dated *October 20, 2020,* more than three months after the filing of the petition to cancel. [Appx57-58.] In fact, the alleged assignment was not recorded until *July of 2021*. [Appx59-60.]

Narita Export filed the '122 application after Adaptrend obtained its '672 trademark registration, filed its petition to cancel the '672 registration, and only *then*

executed the *nunc pro tunc* assignment after the action was initiated (and waited to produce the assignment until the close of discovery). Narita Export's exercise in bootstrapping is directly contrary to the holding of *Gaia Technologies, supra*, requiring a plaintiff to perfect its standing *prior* to filing an action. The present case should be remanded and Narita Export's petition to cancel should be dismissed.

As noted above, a valid assignment of a federal trademark registration must be in writing. 15 U.S.C. § 1060(a)(3). Narita Export, as an alleged owner of common law trademark rights, should not be entitled to broader access to establish standing to petition to cancel a federally registered trademark. At minimum, an alleged oral assignment that claims priority ahead of documented sales of trademark goods should raise the existence of credibility issues that bar summary judgment. The case should be remanded, and the petition dismissed for lack of entitlement to a statutory cause of action.

## **CONCLUSION AND RELIEF SOUGHT**

Appellant Adaptrend, Inc. respectfully requests that the judgment be over turned, the case be remanded and allowed to proceed to trial on the merits including, but not limited to, the cross-examination of Mr. Narita and Mr. Izumi or, alternatively, the case should be remanded and dismissed for lack of entitlement to a statutory cause of action.

Respectfully Submitted,

MANDOUR & ASSOCIATES, APC

Date: June 1, 2023

By:    s/ Gordon E. Gray
Gordon E. Gray (SBN 188896)
Email: ggray@mandorulaw.com
Attorneys for Appellant,
Adaptrend, Inc.

## PROOF OF SERVICE

I hereby certify that on the below date I electronically filed the foregoing

document with the Clerk of the Court for the United States Court of Appeals for

the Federal Circuit using the Appellate Electronic Filing system which will provide

notice of the same on the parties of record.

I hereby certify that on the below date I also served the foregoing document

on the following by email:

> Patrick G. Burns
> GREER BURNS & CRAIN LTD
> 300 South Wacker Drive, Suite 2500
> Chicago, IL 60606
> Email: tmdocket@gbclaw.net, pburns@gbclaw.net, smelby@gbclaw.net

Date: <u>June 1, 2023</u>

By: <u>   s/ Gordon E. Gray          </u>
Gordon E. Gray (SBN 188896)
Email: ggray@mandourlaw.com